UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

FRANK ANTHONY HAROLD,
    PETITIONER,

CASE NO. 94-04026-001

V.

UNITED STATES OF AMERICA,
    RESPONDENT,

PETITIONER'S REQUEST TO PRESERVE HIS BOOKER CLAIM
PURSUANT TO FED.R.CIV.PROC. § 2255¶6(3)

COMES NOW, the petitioner, **Frank Anthony Harold,** (hereinafter referred to as the defendant), pro-se, in the above styled and captioned cause and Respectfully submits his request to Preserve his **Booker** claim|| pursuant to Federal Rules of Civil Procedure § 2255¶6(3). This action is being presented in Good Faith and effort on the petitioner's behalf. The following continues to wit i support thereof:

## JURISDICTION

This Honorable Court is vested with the jurisdiction and authority to hear and address the present matter. **See Title 28 U.S.C. § 2255¶6(3).** The petitioner brings to this Honorable Court's attention that the present request should not be construed as a second or successive § 2255 motion.

In **United States v. Cabey,** Case No. 04-277, decided November 15, 2005, the Court held:

In considering the meaning of "second or successive" in **InRe Taylor,** 171 F.3d 185 (4th Cir. 1999), we noted that "Congress did not write upon a clean slate when it enacted the AEDPA." **Id.** at

187 (**quoting** United States v. Texas, 507 U.S. 529, 534 (1993). Instead, "AEDPA codified and extended judicially constructed limits on the considerations of second and successive applications for collateral relief. **Id.** (quoting **InRe Vail,** 115 F.3d 1192, 1194 (4th Cir. 1997)(en banc). Specifically, as we have opined in the context of a Section 2244(b) motion seeking authorization to file a successive application, AEDPA incorporate longstanding habeas practice, such as the **"abuse of the writ"** doctrine. **InRe Williams,** 364 F.3d 235, 239 (4th Cir. 2004). The abuse of the writ "doctrine generally precluded a federal court from considering claims presented in a successive application unless the applicant could demonstrate cause and prejudice." **Id.** Under the doctrine, codified by AEDPA, **"a claim which did not arise until after a prior petition was filed would not be barred as "second or successive." Taylor,** 171 F.3d at 187.

We have therefore concluded in prior cases that a petition which **"expressly seeks to raise only those issues that originated ...after [petitioner's] first § 2255 petition had been granted" is not "second or successive"** for purposes of AEDPA. **Id.** at 187- 88, See also Slack c. McDaniel, 529 U.S. 473-87 (2000)(noting that pre-AEDPA law, including the abuse of the writ doctrine, should be used in interpreting the meaning of the term of art "second or successive" in AEDPA); **Felker v. Turpin,** 518 U.S. 651, 664 (1996)(noting that AEDPa's restrictions on second or successive petitions **"are well within the compass"** of the evolution of the abuse of the writ doctrine.

Other Circuits that have examined this issue since our decis-

ion in **Taylor**, have uniformly agrees with our conclusion. The Eighth Circuit, for example, noting Supreme Court suggesting that "second or successive" remains a term of art that must be given meaning by reference both to the body of case law that developed before the enactment of AEDPA and the policies that prompted AEDPA's enactment," held that a subsequent Section 2254 petition that raised claims which could not have been brought in the petitioner's first petition was not **"second or successive"** for AEDPA purposes. **Crouch v. Norris,** 251 F.3d 720, 725 (8th Cir. 2001). Such petitions do not abuse that habeas process, the court noted because the petitioner, by definition, could not have raised the claims in his first habeas petition. **Id. at 724.** In addition, the court noted that public policy concerns about undue delay and the finality of State Court convictions motivated Congress when it passed AEDPA. **Id. at 724.** An inmate challenging, at the first possible instance, the application of State Parole proceedings against him does not offend these public policy concerns. The petition does not implicate the finality of the conviction and sentence, nor does it cause any undue delay because the inmate could not have raised the challenge any earlier. See **Id**. Accordingly, reading "second or successive" to include such petitions would not further the purposes behind AEDPA.

Upon reviewing the case law and legislative history of AEDPA, the Third Circuit similarly concluded that "a subsequent petition that challenges the Administration of a sentence is clearly not a "second or successive" petition within the meaning of § 2244,

-3-

if the claim had not arisen or could not have been raised at the time of the prior petition." **Benchoff v. Colleran,** 404 F.3d 812, 817 (3rd Cir. 2005)(emphasis in original)(citing **Singleton v. Norris,** 319 F.3d 1018, 1023 (8th Cir. 2003)("A habeas petition raising a claim that had not arisen at the time of a previous petition is not barred by § 2244(b)..."); **Medberry v. Crosby,** 351 F.3d 1049, 1062 (11th Cir. 2003)("A petition challenging [prison] disciplinary proceedings would not be second or successive where the claim could not have been raised in an earlier petition and does not otherwise constitute an abuse of the writ"); **Hill v. Alaska,** 297 F.3d 895, 898 (9th Cir. 2002)(noting that § 2244(b) is a modified form of res judicata and, therefore, that a subsequent habeas petition should not be barred as "second or successive" if it raises only claims that could not have been raised in an initial petition); **InRe Cain,** 137 F.3d 234, 236 1998)(applying common law principles to [AEDAP] and holding that petitions that "do not present claims that were or could have been raised in...earlier petitions are not "second or successive" petitions.

In **Dodd v. United States,** Case No. 04-5286 (U.S. June 20, 2005). The **Dodd** Court held that the one year limitation period for filing under Title 28 U.S.C. § 2255¶6(3) runs from "the date on which the right asserted was initially recognized by the Supreme Court" and not on the date that the Supreme Court declares the right retroactively applicable. **Id. at \*9.** Thus, if this Court decides a case recognizing a new right, a federal prisoner seeking to assert that right will have one year from this Court's

decision within which to file his § 2255 motion. **Id.** at *11.

In **Booker,** the Supreme Court excised the two parts of the Sentencing Reform Act that rendered the mandatory Guidelines system unconstitutional: the part in 18 U.S.C. § 3553(b)(1) making the Guidelines result binding on the Sentencing Court; and the part in § 3742(e) requiring **de novo** review of sentences on appeal. **Booker,** 125 S.Ct. at 764. In doing so, the Supreme Court stated that "[w]it these two sections excised (and statutory cross-references to the two sections consequently invalidated), the remainder of the Act satisfies the Court's Constitutional requirement. **Id.** The Supreme Court in **Booker** instructed that its remedial holding applies to cases on direct review. **Id.** at 769 ("We must apply today's holding-both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act to all cases on direct review).

Nor it is a serious problem for initial habeas corpus petitions. See **Schriro v. Summerlin,** 542 U.S.___,159 L.Ed.2d 442, 142 S.Ct. 2519 (2004) provides compelling support for **Booker's** retroactivity to initial habeas cases. Although the Supreme Court in **Summerlin** rejected retroactivity of its new procedural rule announced in **Ring v. Arizona,** 536 U.S. 584, 153 L.Ed.2d 556, 122 S.Ct. 2428 (2002)(holding a jury, not a judge, must make the findings necessary to impose the death penalty), it did so because the possibility of inaccuracy was minimal in that both factfinders there were required to use the same beyond a reasonable doubt standard. Pre-**Booker,** on the other hand, judges determined sentencing enhancements factors by the preponderance of

-5-

of the evidence standard. Post-**Booker** those facts must be determined by a jury and proven and proven beyond a reasonable doubt. Accordingly, pre-**Booker** the factfinding process so **"seriously diminished accuracy as to produce an "impermissibly large risk of injustice."** Summerlin, 159 L.Ed.2d at 451 (emphasis original).

The petition brings to this Honorable Court's attention that the Eleventh Circuit has not ruled that **Booker** is retroactive for purposes of collateral review. Thus, the **Dodd** decision raises serious red flags, when the AEDPA was intertwined to include a one year time limitation, asserting that all defendants/petitioners have one year from the date of the decision in **Booker** to file a § 2255, or worse to at least preserve the claim by and through § 2255¶6(3). It should be further noted that prior to the petitioner's first § 2255 motion, the law in **Booker** was not decided and the petitioner could not have failed and/or raised this issue at an earlier time, because the law was unsettled. Moreover, any assertions in regard to a second or successive petition is erroneous, only the Court of Appeals have the authority and discretion to entertain a Second or Successive § 2255 motion. Nor should this court conclude that the petitioner is launching a collateral attack at his conviction and sentence in light of **Booker**, thus, petitioner is only preserving his **Booker** claim before the deadline expires. Evenmoreso, the petitioner would show in this motion that he has standings to show that the **Booker** decision is applicable to his case, especially the way he was sentenced above his statutory maximum, which has been rendered unconstitutional in light of **Booker**, now that the Supreme Court has cleared up

all of the misinterpretations of the law and make the guideline **(advisory) and not (mandatory)** as they were when the petitioner's sentence was enhanced. Specifically the petitioner was deprived of his Fifth and Sixth Amendment Right, because no jury found the factors necessary to impose the petitioner's an enhanced sentence.

In the Case at bar, the district court found on its own notion that the petitioner's criminal history is so egregious and serious that criminal history category VI does not adequately reflect the seriousness of the defendant's past criminal conduct, the likeihood that he will commit other criminal conduct, nor does it take into consideration the extremely violent nature of the defendant's prior criminal history. The defendant's 23 criminal history points would place him in an extrapolated criminal history category IX with a sentencing guideline range of 457 to 522 months. The Court believes that a sentence of 480 months imprisonment more accurately reflects the seriousness and extent of the defendant's prior criminal history and is an appropriate sentence in this case.

The petitioner contends that the district court clearly erred by creating a criminal history category that exceeded Congresses power and authority, when it made 6 criminal history categories in the Sentencing Guidelines. The petitioner also points out that his **Booker**-type error, is so instructive, because the petitioner's statutory maximum, was triggered by the district judge, without the jury making the requisite findings necessary to impose a sentence in this Case which exceeded the powers of Congress, is clearly void, and unconstitutional; and once **Booker** is make retro-

active the petitioner illegal sentence must be readily corrected, because a manifest injustice has occurred which affects the fundamental fairness and intrudes upon this Court's integrity. Thus, the petitioner preserves every enhancement, even the obstruction of justice, all have violated the rule announced in **Booker**, the petitioner has not forfeited none of his issues.

The petitioner contends that he had a constitutional right to have the jury determine his guilt on all of the elements of his crime, long before the rulings in **Apprendi**, **Blakely**, and **Booker**, cases were ever decided, thus, the Fifth and Sixth Amendment protections and rights should have been binding on the petitioner's trial from the on set. See **Sullivan v. Lousiana**, 113 S.Ct. at 2083; and **InRe Winship**, 397 U.S. 358)(rather the question here is not whether the **Booker** decision is retroactive, but rather the petitioner's was deprived of his constitutional right's by the Supreme Guidelines being rendered unconstitutional).

WHEREFORE, the petitioner prayerfully request that his Motion to Preserve his **Booker** claim should be granted in light of the interest of justice.

Respectfully Submitted,

*Frank A. Harold*
Frank Anthony Harold, pro-se,

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the aforementioned § 2255¶6(3) has been sent to the following parties listed below by way of United States Postal Services prepaid for delivery on this __7__ day of __January__ in the year of 2006:

Attn:Michael T. Simpson
Assistant U.S. Attorney
U.S. Department of Justice
Northern District of Florida
111 North Adams Street, Fourth Floor
Tallahassee, Florida 32301


*Frank A. Harold*
Frank Anthony Harold, <u>pro-se</u>,
Reg. No. 10173-017
Federal Correctional Complex-USP
P.O. BOX 1033
Coleman, Florida 33521-1033